The next matter on our calendar is L.K. by S.K. and J.W. v. New York City Department of Education. Thank you. Good morning. Please proceed. May it please the Court, my name is Gary Mayerson, and I don't represent a county, I don't represent a class. My firm has represented, however, a student who was five years old at the time of this, of the underlying hearing, who's now eight years old. Let me just jump to his severity as a child with autism. We've represented over a thousand students in 35 states. If he's not the most severe, he would be among the top two or three for sure. The SRO made that finding, his severity is not in dispute at all. And the SRO and the District Court, in this case, acknowledged that this student needed additional after-school services, supplemental services on top of his education at the not-for-profit Manhattan Children's Center. So that part was not in dispute. Where the Court went wrong was in dismissing the case, saying, I recognize that he has all these needs, but that'll be for some later court to decide. The Court had the obligation and the duty to make that decision at that point or to remand the case. But was there a factual record on which the District Court could make that finding? Absolutely. Absolutely, Judge. We had nine witnesses, nine witnesses testified for the plaintiff at the underlying hearing, all of which specified exactly the services that he needed. There was not a single witness called by the Department of Education. They conceded prong one. They conceded that they had deprived the student of a FAPE, a free and appropriate public education. So we didn't have to deal with that issue. So this case is only about the one and a half hours per week for additional therapy, right? Occupational therapy. No, it's actually the additional incremental cost between the ABA hours. We were receiving payment on those ABA hours, I think at $90 an hour, and there's an actual market value of what the providers actually charge. But so that's, so it's the market rate for the ABA hours and the extra one and a half hours per week of occupational therapy. Yes, Your Honor. And I think there's also a speech, a small speech component. And we're not talking about three quarters of a penny here. We're talking about certainly thousands of dollars are involved with this. How much does a week of occupational therapy cost, one and a half hours? What's the average rate? I think it's approximately, the cost of the OT hours is just under $200 an hour. I think it's about $180 an hour, $175 an hour. So it would be close to $300 for the hour and a half session we're talking about. $300 per week per... Yes, but if I might just... Continue. I might jump to the main issue here. Judge Pooler, you were on the Frank G case. Yes, I was. Yes, with Judge Sotomayor. And Judge Hall, you were on the CL case. And you, Judge Lohier, you were on the TK case. And they all involve, this is not a matter of first impression. Once the school district concedes or is fined that the school district has failed, the school district is subject to the following standard. They only have to prove, is our program reasonably calculated to produce a meaningful educational benefit? If the school district proves that, the parent wins nothing. That is the standard on prong one. Here, the prong two standard, as this Court has held time and again, is even a more relaxed standard for parents. Understanding that parents are just parents. They're not educational professionals. And it's difficult for them to cobble together these programs once there's been a faith deprivation. So the standard on prong two is a somewhat more relaxed standard for parents. They need not prove that it's perfect. They need not prove that it's fully certified. They get a little bit of a break. But essentially, what the district court did here was elevate the standard to a standard higher than what this, what the school district has to prove on prong one. If we follow the district court's reasoning, and if there was a remand as suggested by the Department of Education, the remand would include an examination of where exactly does FAPE begin. Is it 16 hours? Is it 18 hours? Is it 19 hours? That is not what this Court held in Frank 3, which is one of our other cases. Once there's been a FAPE deprivation, you simply look to see whether the services are reasonably calculated, understanding that, yes, excessiveness has a role. Unreasonable. Breyer, without any reference to any equitable consideration. That's your argument. No. I want to just – I just was about to say that, yes, there is an unreasonableness factor. There is an excessiveness factor. And that the time for that is at the hearing. The school district here put on no evidence and no witnesses, no testimony whatsoever. They were relying on the summer 2013 plan in which this extra one and a half hours per week of occupational therapy was not included. Isn't that correct? They were relying on the IEP plan, Your Honor? The 2013 services provided. Yes. They were relying on an IEP, which is – that was the last agreed upon IEP. That was the penancy benefit that the child gets automatically and unconditionally under Honig v. Doe. But this was not – if you look at the actual services that were being requested, if you look at the appendix at 386, page 386 has the exact services that the parents were requesting by way of their demand. So those services exceeded the amount of the penancy benefit. So I do agree. There is a place for excessiveness. There is a place for unreasonableness. But that time is past. That time was at the hearing. And the school district has to put on some evidence, because under Gustafson, this Court held that if there's an excessiveness or unreasonableness aspect, the burden is on the school district to prove that. They proved nothing. So under this record, what would we be remanding back to Judge Nathan for? If there is any remand, we respectfully submit that it should be to – with instructions to apply the rule of law in Frank G. and in C.L., not to make – not to follow this new where-does-fate-begin inquiry that no court in the land has ever sanctioned. We couldn't find a case where any circuit or any district court ever followed that kind of inquiry. What will NJUF tell us when the Supreme Court decides? I have an amicus case. I'm on – I'm the director of the Federal Legal Appeals Project for Autism Speaks. I have an amicus brief on that case as well. But the simple answer in this case is that it will have no impact because they conceded prong one. But what's at stake in NJUF is everything. NJUF is going to be determined – the court – the high court will determine whether or not a slightly higher than de minimis standard is enough or whether a meaningful standard is enough. And I will submit to you, at least when talking about children with autism, and you look at the 1997 amendments and the 2004 amendments to the IDEA statute, Congress completely changed the IDEA statute and the courts have not really been following the sea change. After Brown v. Board of Education, everything was access-oriented, providing access to education. And that's what the IDEA statute was perceived as doing in the earlier cases under Rowley and so forth. But these new amendments in 2004 and 1997 are outcome-oriented. They're outcome-oriented. They require students to be groomed for some measure of increased self-sufficiency and greater independence. That's what Congress wants to see. And in fact, when it comes to autism, which is our population, we're talking about 50,000 students per year that are going to graduate to adulthood every single year. Okay? So you can either invest the money now and we can have a meaningful standard so that we can have greater self-sufficiency and greater independence at the time of adulthood, or we can let these students graduate to a lifetime of unemployment and institutionalization. So the Andrew F. case is hugely important. And the court, I believe, if I had to guess, I would expect that there would be a meaningful standard at the very least. But don't you think even if we remand, that we would have to wait to see, to answer your question, where does a FAPE begin? Don't you think we'll have to wait for that decision? I think in this case where the FAPE was conceded that they've deprived of a FAPE, that it's moot. I think it's moot and academic in this case. I don't think we have to wait. And, Andrew, if we were bringing that court, that decision and that grant of certiorari to the court's attention because Your view is that no matter what happens in that case, they've already conceded the FAPE issue. Right. We can't, I don't think we need to unscramble, nor can we unscramble that. Going forward, the whole point of this litigation is to put a plan in place so we don't go through this every year, every school year. Wouldn't that be ideal? That would be ideal. In fact, we have, there's some, there's an intervening settlement that we're looking at right now. But we do have to fix the amount of penancy that the student is going to be receiving going forward. And I think that that can be done, it could either be done at this level by this court or a remand with instructions to simply follow Frank G. And the total amount of penancy as of today, just sort of assuming they're not. I'm sorry, Judge. What's the total amount of penancy as of today? The penancy would, is reflected, if you look at page 386 of the record, it reflects what the, the penancy order is. And I think it's in other situations. It's approximately 20 hours of ABA services, three or four hours of speech services, a couple hours of occupational therapy. I see that. Yes. But what is the amount? What is the, how much does that cost? Yeah. I'm giving a, an approximation, Judge. I think that the cost of penancy is probably, Maria, approximately, just under, I think just under $200,000. That includes the tuition at the M, at the school? I believe so. Yes, Judge. And all the services at the school are included in the tuition? All the services that the school provides are in the tuition. But these are, these are some, some of these are extra services. I understand. And the school is 83 is, per year? How much? Ninety-seven. Ninety, ninety, ninety-three. Almost $100,000. And just in relation to this, Judge, I want to just point out that we're talking about a student, even though he's only eight or nine years old, who is this close to being in a far more restrictive and far more costly residential placement. We have represented students in these residential placements. The cost of that is probably more like $350,000 to $400,000 per year. It's like being in a hospital and having some, you know, having a major event in the hospital. So this is really cost effective? It wouldn't seem so at these kind of rates. But yes, $200,000 or $300,000 is a heck of a lot less than $400,000. Absolutely. All right. Thank you. You've reserved two minutes for rebuttal. We'll hear from DOE. Good morning, Your Honors. My name is Emma Grunberg, and I represent the New York City Department of Education. This court should affirm the district court's determination that the IDEA does not require public funding for all of L.K.'s home-based services. The record amply supports the SRO and the district court's conclusion that not all of those services were required to ensure L.K.'s educational progress. But the only thing in question is one and a half hours of occupational therapy. So, Your Honor, that is correct that that is the difference between the current pendency entitlement and the services sought by the parents. But that's the difference between the 2013 summer that is the basis for the pendency order and the services that L.K. is getting now. It's one and a half weeks, one and a half hours per week of occupational therapy. That's correct. However, practically speaking, the effect of any pendency requirement in IDEA litigation affects the party's reimbursement entitlements and the amount that will be spent in future litigation and ongoing litigation over future years of L.K.'s education. So, practically speaking, it would really be much better, and I think my opponent agrees, to hammer out what exactly DOE owes now instead of sort of kicking it down the road for future litigation. Well, is it conceivable that L.K. will need different, either more or less, services as he ages? Well, sure it is, Your Honor, but right now we're operating under that 2013 pendency, which is receding farther and farther into the future. We believe that both the SRO and the district court really looked at the record quite carefully and decided not all of these services were necessary for educational progress. But the only one that is the difference, not all of them were necessary, it's one and a half hours of occupational therapy per week. Is that correct? Well, both the SRO and the district court actually were looking at the record as a whole in all of the services. Right, but that's the only difference that emerges. That's the difference between the pendency requirement, yes, correct, Your Honor, and the services requested. That's what you're fighting over in front of us. I'm trying to . . . I'm now confused as to what we're fighting about. Is it only the occupational therapy? No, Your Honor. Price difference? All right. So, there's more than that. It's also the reasonable rates of reimbursement. Well, we think that to avoid the pendency from 2013 continuing to govern this case for years into the future, we think that the district court should go one step further, which he was on the precipice of doing, and just determine which services were necessary under the IDEA and which were not. The district court was almost there. It concluded that some of these services were necessary to provide an educational progress. Some of them were not, and really did quite carefully look at the testimony, but just didn't go that one step further because the district court erroneously thought that the case was moot. And we agree with the parents that it's not moot. But if the court was to remand to decide whether that one extra session of OT was necessary, it would really make sense for right now in this litigation, instead of waiting for future years, for the court to go that one step further and make particularized findings. For us to do that? No, for the district court to do that. For the district court, yes. Could they do a future FAPE without seeing how the child develops, how he's doing in the present system, what he would need more or less of? You can't settle this for the rest of his school life, can you? Well, right now, as the parents' counsel mentioned, there are settlement negotiations. There have been settlements. And all of that litigation or settlement discussion is based on this 2013 pendency. So we really feel that. He was five years old. Exactly. Well, that's crazy. Exactly. So that's why the district court was almost there. Was almost there and looked at all the testimony and really did go through the testimony quite carefully, as did the SRO, but just did not kind of kicked it down the can for a future court. What exactly is it that you want from us? Sure. Please list it. I'm going to write it down. Right. So we would like the court to remand to the district court to make particularized findings about which services are necessary under the IDEA. And we think that the record amply supports both the SRO and the district court's finding that not all of the services are. For instance... Can the district court do that by disallowing the one and a half hours per week? The district court made no particularized findings about which services might be required. Simply found that not all of them were. I believe under the mistaken impression that the case was moot. Doesn't the district court, when it gets it back from us in that guise, have to be told to send it back to the state for the state agencies to make that determination which it then reviews according to the standards we apply for the review of state hearing officer, or sorry, individual hearing officer and state hearing officer or review officer? I think it would be very reasonable for the district court to remand to an SRO with that educational specific knowledge. However, DOE does not, it's not looking for a do-over here. We don't need to put on additional evidence. We believe that the record has amply been developed. There was testimony heard from each of... The records developed, they just didn't make the findings addressing the issue that we have before. Adequate findings. Exactly. They got almost there, but they thought the case was moot. It's not. So they didn't make those particularized findings which we feel like we really need at this point instead of kicking it down the can for years of future litigation. What else do you want? That's it. What about the reasonable rates issue? Well, if the district court would like to consider that, we don't believe it was raised here in the complaint or before the district court. But you have no problem with the district court considering that? We might argue before the district court that the issue was waived, but I suppose not, Your Honor. So you want the district court to tell all the parties whether L.K. is entitled to this extra one and a half hours of occupational therapy per week and do what else going forward? Make particularized findings over which home-based services DOE needs to reimburse under the IDEA. So it's not just the one and a half hours of occupational therapy? It's all the services? That's correct. As the parents argued in their opening brief, because the district court and the SRO made these findings that not all of those services were reimbursable under the IDEA, the next necessary step is to decide, well, which services are? And this is the most recent litigation and it should be done in this litigation instead of waiting for more lawsuits to be brought, for more settlements to happen. It should be done here on this record that we have developed before us. Do you agree that because the DOE conceded that they didn't provide a FAPE, that NJUF will not affect the outcome of this case? Yes, we do. We think that essentially the question in NJUF is what is the level of educational progress to be required under the IDEA? Is it more than trivial or is it meaningful and significant? Right. And here, the finding that the district court and the SRO made was some of these home-based services were designed for generalization of skills to the home environment. And so they were not related to, they were not necessary for any educational progress. So when you say some of these services, it only comes down to the same one and a half hour per week. Correct? Well, Your Honor, we strongly believe that the remand should cover all services because any pendency entitlement that comes out of the remand will cover future litigation over future years. One question that the district court, if you get what you want, would have to deal with is this idea of generalized skills. That's correct, Your Honor. What is that idea of generalized skills that it would specifically have to review? Right. So the question is whether the home-based services, whether each service was merely for the purpose of generalizing skills to the home environment essentially to improve the student's ability to be self-sufficient, which the Supreme Court has held is not the purpose of the IDEA, or whether those services are necessary to make educational progress. And do we understand that? So do you agree that there are some circumstances under which the disability is so severe that this generalized skills is part of what it would require to assure faith? Absolutely, Your Honor. And here we have conceded that some of these services were necessary. The only question is which ones. I'm just trying to understand. Some services that are designed to enhance his generalized skills in some areas? If the services designed to enhance the generalized skills are necessary to bolster and ensure that he's making educational progress at school. For example, with this Applied Behavioral Analysis, there was testimony that some of that ABA therapy at home was in fact necessary to make sure that he continues to make those gains at school. Is Bernhardt true? Yes, I believe so. Now with some of the other services, for example, the speech-language therapy supervisor at the school said in her affidavit that the home-based therapy for speech-language services were really for the purpose of generalizing the skills learned in school to the home environment. The school occupational therapist said that the home occupational therapy was supposed to address his sensory needs at home because the home setting is different than other settings. I direct you to page 777 of the appendix where it looks to me that the SRO based his determination on evidence in the record which indicated L.K. had been making sufficient educational progress based on slightly more limited services under the summer 2013 IEP and did not base his determination on a finding that L.K.'s supplemental services were only for generalization. Isn't that correct? I don't believe so, Yana. Just one second. Right. So the SRO found that the reimbursement does not require maximization of the student's potential, although the parents can of course choose to provide extra services on their own, while the SRO can understand that the parents might believe these services were desirable. Oh, and then I therefore conclude that EQUI does not require the district to reimburse the parents for home and community based services for the purpose of the generalization of skills, in addition to the school day services at NPS. For example, occupational therapy that went to playing with his baby sister or playing video games or gross motor skills. A lot of that overlapped with the occupational therapy he was receiving at school. However, we don't believe that the record supports that he needed all of that to make educational progress as several of these service providers. Do you agree with the SRO's opinion on that issue? No, we directly agree with the SRO's opinion on that issue. But didn't he say this was related to his educational attainments? So the SRO... That he had been making sufficient educational progress based on slightly more limited services? But it was all about educational progress, not necessarily for generalization? The SRO held or found I therefore conclude that EQUI does not require the district to reimburse the parents for home and community based services for the purpose of generalization of skills. Accordingly, I find that the hearing record does not support a conclusion that the student required all of the home and community based services the parents obtained for him as part of his unilateral placement. Now, DOE does not contest that it is paying for the almost $100,000 tuition at MCC, which includes occupational therapy, speech language therapy, ABA, a host of services. We simply believe that the record amply supports the SRO's conclusion that not all of the home based services were required. We're still talking about that one and a half hours of occupational therapy. That prevents the case from being moot, but we do strongly believe as the parents argued in their opening brief that there needs to be some sort of particularized findings about what services were necessary to prevent this dependency from 2013. So you want to depart from the 2013 summer IEP? You want to make a new finding on what services are required? Exactly, Your Honor. The only reason the 2013 IEP is still controlling underpendency is because it's the last unappealed order. There's no other reason. You want to make the new IEP? Is that what you want? Is that what DOE wants? No, no. DOE simply the question here is on prong three. As courts have found, there needs to be some rational relation between what DOE would have been required to pay for at the outset and what DOE is required to equitably reimburse. What appears on 777 is a prong three conclusion? Yes. And so that's the question? That is the question. And we believe that the SRO was amply supported in the record in his conclusion that not all of these services were necessary for educational progress, but simply needed to go one step further and determine which services were and which services weren't. Thank you, Your Honor. If the Court has no further questions. Mr. Mayerson, I believe you reserved two minutes for rebuttal. Thank you, Judge. I just want to make very clear that with the penancy wound up paying for largely all these services. There was still no finding. It went beyond just simply the one and a half hours of OT. We were waiting for the District Court to make a finding, not as to what services were needed. We don't think that need is precisely the test, but rather this reasonably calculated test which is applied to school districts. Whether that, the Frank G., or C.L., or R.E., or whatever decision you rely upon, they all say the same thing. Reasonably calculated provided meaningful educational benefit subject to any finding or any kind of evidence in the record which there is none in this case about unreasonableness or excessiveness. So we're saying that this... So as I understand the argument, you're saying that the SRO here, for example, was wrong to proceed to Prong 3 once there was a determination about what was reasonably calculated to... Is that correct? That's correct, Judge, because there was nothing for the SRO to rely upon in terms of adverse evidence from the Department of Education for which he could say, oh, this little piece, let's tease this out. This is just for generalization. This is just for learning. Because we're talking about a severely autistic child. We're not talking about a valedictorian. We're not talking about academics and regent scholarships. That's not what we're talking about. We're talking about how to tie your shoes. We're talking about... Are you saying that that was clearly erroneous as a factual matter, or are you saying that it was, as a legal matter, improper for... Oh. We're saying that the SRO followed the wrong standard and he also had no basis to make that any kind of recitation of fact about... Have you ever said that it's improper as a matter of law to proceed to Prong 3? Because there's also reference in our case law to an SRO looking at all relevant factors. Presumably that would include equitable factors. That's true, but we have the MH case in this circuit that also says that the SRO's decision should be thorough and complete. It shouldn't just be a throwaway and say, oh, generalization. There should be some demerits for generalization. That goes back to my question. Ultimately, you are resting on the fact that there was nothing in the record to support that equitable determination. There was nothing in the record, although, given the opportunity to put something in, we have Gustafson that says it's their burden. They didn't put in anything. So why should the parents have to suffer because of a tease-out on speculative generalization tease-outs when there was nothing in the record to prove that? They didn't put anything in on reasonableness of the hourly rates? No. Nothing. They didn't put a single witness on. We had nine witnesses. They had zero. Nine-zero. They had the opportunity to do so. That's exactly my point. When you have no record on reasonableness, no record on excessiveness, how do you take off points for the parent? There was no showing. Our witnesses said, this is my rate. I work in Manhattan. This is what I charge. This is what I usually charge everybody. We had market-rate evidence all over the place. What about the need for the one-and-a-half extra hours of occupation? We had testimony about that. But again, Judge, this is also about the 20 extra hours beyond the school of ABA. We needed a finding so that we would know what our pendency benefit was going forward. But for this appeal, we would have no pendency benefit. Did you get the 20 extra hours of ABA? We got it because the case was then pending. But as soon as Judge Nathan dismissed the case, unless we took this appeal, his appendency benefit would have evaporated. That was the whole point. So we needed that to be fixed. And even the Department of Education agreed that that finding, some kind of finding, needed to be made so this child's pendency protection would not simply evaporate, which is what would have happened if we didn't take this appeal. That's what I asked opposing counsel. Are you looking for a new IEP? We're not looking for a new IEP. That IEP, when he was five years old, has been surpassed by, there have been additional IEPs since that time. But we have cases, I know Judge Lohier, we had the TK case, that went on for eight years. I'm not suggesting that a pendency benefit need to go on for eight years as is. But his needs are very severe. He needs a school, he needs probably about 20 hours a week of ABA, he needs several hours of speech. That hasn't changed since he's five years old. I mean, whether it's one or two hours difference is maybe the question. Why wouldn't you, and maybe the answer is you do and I don't appreciate that, but why wouldn't you want to remand since part of the problem seems to have rested on a mistaken impression or a mistaken understanding by the district court, remand it back to the district court, correct that misimpression and have Judge Nathan in addition to correcting the misimpression or misunderstanding, go through what is necessary and what's not. And maybe you'll have the benefit of the Supreme Court's that might shed some light on that. Judge Lohier, I'm in favor of a remand back to the district court to apply the rule in CL and in Frank G. On this record, I am not in favor of a remand for a do-over. There should not be a do-over. They had their chance to put in the, they made their record. The record is what it is. They conceded prong one. There should not be any redo of that either. So to that extent, a limited remand Prong one, that is not in my view, good at all. They're not arguing. But Judge Lohier, a limited remand with instructions back to the district court to apply the rule in CL and Frank G. on this record, why not? Absolutely. Somebody has to make that decision. If this court feels that it would be appropriate to remand for that purpose I just think that the district court was operating under a mistake mistaken understanding. So why not let it correct that understanding and proceed? As you've explained to Judge, it makes perfect sense on that standard. But not to determine this whole issue of where does fate begin. We strenuously object to creating a new standard that this court neither this court nor any other court in the land has ever adopted which is we're going to figure out that the district court is going to figure out from 2013 where fate began that year for that child with these additional services. That's not the statement. Right. And in any event I mean I hear the word settlement I don't want to get involved in settlement discussions at all but things might proceed. Judge, last year we settled probably 95% of our cases with the City of New York. We're hoping this might be the next one. I wrote a book called How to Compromise with Your School District Without Compromising Your Child I'm all about settlement. That's never been the problem in this case. Thank you. Thank you both for a very good argument. We'll reserve decision. The next two cases on our calendar are on